OPINION OF THE COURT
Jack M. Battaglia, J.
Defendant Travelers Property Casualty Corporation seeks leave to reargue this court’s decision and order dated May 13, 2004, which granted plaintiff A.B. Medical Services PLLC sum *215 mary judgment on a claim for first-party no-fault benefits. As will appear, the court grants the motion for reargument, and, on reargument, denies plaintiff’s motion for summary judgment.
In its decision and order, the court determined that A.B. Medical made a prima facie showing that it was entitled to judgment with proof of submission of a properly-completed claim, thereby shifting the burden to Travelers to demonstrate by proof in admissible form that the services provided were not medically necessary. (See Amaze Med. Supply Inc. v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U], *3 [App Term, 2d & 11th Jud Dists 2003].) The court further determined that the unsworn peer review report of Christopher Burrei, DO, submitted by Travelers in opposition, was not admissible as evidence to raise a triable issue as to the lack of medical necessity. (See Jamil M. Abraham M.D. P.C. v Country Wide Ins. Co., 3 Misc 3d 130[A], 2004 NY Slip Op 50388, *2 [App Term, 2d & 11th Jud Dists 2004]; A.B. Med. Servs. v New York Cent. Mut. Fire Ins. Co., 3 Misc 3d 136[A], 2004 NY Slip Op 50507[U] [App Term, 2d & 11th Jud Dists 2004].)
On this motion, Travelers contends that, in determining that the peer review report was not admissible evidence, the court overlooked pertinent case law concerning evidentiary requirements on “serious injury’ 7‘ ‘threshold’ ’ motions and concerning the business records exception to the hearsay rule. The court is granting leave to reargue because Travelers did not have the opportunity on the prior motion to argue for the admissibility of the peer review report.
Assuming that the peer review report would be admissible evidence of medical necessity if it qualified as a business record of Travelers, the affidavit of Michael Gleason is not sufficient to do so, and the attorney’s affirmation in support of this motion cannot supplement it. Foundation requirements to qualify a document as a business record fully apply on a motion for summary judgment. (See Bowers v Merchants Mut. Ins. Co., 248 AD2d 1005 [4th Dept 1998].)
The more substantial contention is based upon case law authority on “serious injury’’/‘ ‘threshold’’ motions. (See, generally, Insurance Law § 5102 [d]; Gaddy v Eyler, 79 NY2d 955 [1992].) The provisions for first-party benefits and the “threshold” for personal injury actions seeking compensation for pain and suffering are found in the No-Fault Law, “adopted by the Legislature in 1973 to assure prompt and full compensation for *216 economic loss and to provide for non-economic loss in the case of serious injury.” (Oberly v Bangs Ambulance, 96 NY2d 295, 298 [2001].) In upholding the constitutionality of the No-Fault Law, the Court of Appeals articulated the relationship between the provisions for first-party benefits and the threshold in light of the statutory purposes:
“[B]y eliminating recovery for pain and suffering in relatively minor cases and by simultaneously guaranteeing prompt and full compensation for economic losses up to $50,000 without the necessity of recourse to the courts, the Legislature acted reasonably to eliminate much of the wasted expenditures of premium dollars on expenses extraneous to treatment of injury . . .” (Montgomery v Daniels, 38 NY2d 41, 55 [1975]).
There is a “strict requirement” that “evidentiary proof in admissible form” be submitted in support of, and in opposition to, a motion for summary judgment. (See Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067-1068 [1979].) “The rule with respect to defeating a motion for summary judgment, however, is more flexible, for the opposing party, as contrasted with the movant, may be permitted to demonstrate acceptable excuse for his failure to meet the strict requirement of tender in admissible form.” (Id. at 1068.)
In the context of a “serious injury’Y£‘threshold” motion, to the extent that either party relies on the findings of that party’s “own medical witness,” the requirement for submission of “evidentiary proof in admissible form” is generally fully applicable. (See Pagano v Kingsbury, 182 AD2d 268, 270 [2d Dept 1992].) A defendant is permitted to rely, however, on the findings of a plaintiffs physician, even though they are contained in an unsworn report. (See id. at 271.)
Moreover, if an unsworn report is “relied upon” by the defendant, it is deemed “properly before the court,” and the plaintiff is permitted to rely on it as well. (See Perry v Pagano, 267 AD2d 290, 290 [2d Dept 1999].)
Although these exceptions to the requirement for “evidentiary proof in admissible form” are often recognized (as will be apparent below), the theoretical or policy bases for the exceptions have not been fully articulated in the opinions. It has been said that “[c]learly, consideration of a plaintiff’s unsworn medical report submitted in support of a defendant’s motion for summary judgment, based on the plaintiffs failure to establish ‘seri *217 ous injury’, fosters the expeditious disposition of these cases.” (Pagano v Kingsbury, 182 AD2d at 271.) To expand upon the suggestion, alleviating a defendant’s evidentiary burden on a threshold motion may further “one of the obvious goals of the Legislature’s scheme of no-fault automobile reparations,” which “is to keep minor personal injury cases out of court.” (See Licari v Elliott, 57 NY2d 230, 236 [1982].) The exception also recognizes that the Legislature “intended that the court first determine whether or not a prima facie case of serious injury has been established” (see id. at 237), which, of course, is the purpose of the threshold motion.
As for permitting a plaintiff to rely on an unsworn report that has been placed by the defendant “properly before the court,” the only articulated rationale that this court has found is that, having brought the report to the court’s attention “defendant cannot now be heard to complain.” (See Pietrocola v Battibulli, 238 AD2d 864, 866 n [3d Dept 1997].) Extending the exception to the plaintiff, therefore, is not based on the policy justifying the exception in the first instance, but rather a policy of evenhandedness. The result is consistent with the “rule that otherwise inadmissible evidence may become admissible where the adverse party has ‘opened the door’ to it by offering evidence, or making an argument based on the evidence, which might otherwise mislead the factfinder.” (See People v Massie, 2 NY3d 179, 180-181 [2004].)
This court is aware of only three opinions outside the threshold area that recognize these exceptions to the requirement for proof in admissible form, and two of the opinions involve the unsworn reports of a plaintiffs physicians. In Arbour v Commercial Life Ins. Co. (240 AD2d 1001 [3d Dept 1997]), an action for benefits under a disability insurance policy, the Court cited threshold cases in support, and noted that the “records relied upon by defendant were submitted by plaintiff in response to defendant’s discovery demands” (id. at 1002). In Oeffler v Miles Inc. (241 AD2d 822 [3d Dept 1997]), a personal injury action, the Court likewise cited threshold cases, and noted that the defendants’ submissions “consisted of records and reports of plaintiffs own doctors for which defendants received releases” (id. at 824; see also Burnett v Zito, 252 AD2d 879, 880 [3d Dept 1998] [“plaintiffs authorization for release (of medical records) insured their authenticity”]).
Perhaps more significant for purposes of this motion is the Second Department’s opinion in Mahoney v Jackson’s Mar. (305 *218 AD2d 555 [2d Dept 2003]). The opinion states that the action was for damages for personal injuries, and concludes that the “conflicting reports of the plaintiffs and [moving defendant’s] experts give rise to triable issues of fact” (id. at 555). There is no indication that the motion concerned “serious injury” or that the “experts” were medical experts. The Court concludes summarily that the defendant’s “remaining contention is without merit since the report of the plaintiff’s expert was submitted by [defendant] in support of his motion.” (Id. at 556.) The Court’s opinion in Borino v Little (273 AD2d 262 [2d Dept 2000]), a threshold decision,, is cited in support.
Accepting, therefore, that the exceptions may be applied outside the threshold area, a number of questions arise: are the exceptions limited to medical reports or records?; what is the nature of the use made by the moving party that will allow use by the opposing party?; and, most importantly, into what areas other than threshold might the exceptions be legitimately extended?
Taking the last question first, because the answer affects the others, it is clear to this court that, if any area other than threshold is appropriate for application of the exceptions, it is a motion for summary judgment on a claim for first-party no-fault benefits. As established above, the statutory provisions for first-party benefits and those limiting recovery for noneconomic loss to “serious injury” are interrelated and mutually reinforcing mechanisms for furthering the legislative purposes. This court is not aware that the policy favoring prompt and full compensation for economic losses has been deemed to be any less important to the overall statutory goals than the policy favoring limitation of recovery for noneconomic loss to cases of “serious injury.” Nor is there apparent any reason to encourage summary disposition in one area by the reduction of evidentiary burdens, but not in the other.
If, therefore, consideration of a plaintiffs unsworn medical report “fosters the expeditious disposition” of actions for noneconomic loss (see Pagano v Kingsbury, 182 AD2d at 271), then consideration of at least certain types of documents that originate from a defendant insurer would seem to “foster[ ] the expeditious disposition” of actions for first-party benefits. And, if a defendant “cannot be heard to complain” when a plaintiff uses its own unsworn report that the defendant used to the plaintiffs disadvantage (see Pietrocola v Battibulli, 238 AD2d at 866 n), then neither should a plaintiff complain when a defen *219 dant uses a document that the plaintiff was permitted to use against the defendant.
From the perspective of the articulated policies, there would appear to be no reason to limit admissibility to a party’s medical reports or records or to limit use to the elements of the movant’s prima facie showing. Yet, with the apparent exception of Mahoney v Jackson’s Mar. (305 AD2d 555 [2003]), all of the opinions that permit the moving defendant to make its showing with an otherwise inadmissible document concern the report(s) of a plaintiff’s own physician(s). Perhaps the courts were responding to the perceived trustworthiness deemed to inhere in medical reports (see Williams v Alexander, 309 NY 283, 286-289 [1955]), even though they do not say so. Or perhaps the source of the documents or information — “plaintiff’s own” health care provider (see Pagano v Kingsbury, 182 AD2d at 270; Pietrocola v Battibulli, 238 AD2d at 866 n) — was the key to reliability and probative value.
Although the articulated policies do not reveal any limiting principle, other than the scope and strength of the respective policies themselves, limiting principles are necessary. With respect to the use by the moving party, the source of the document or information does indeed provide limits. And so, as apparently in Mahoney v Jackson’s Mar. (305 AD2d at 556), it is the fact that the source is the other party or the other party’s expert, with whatever kind of expertise, that justifies the court’s consideration of the proffered “evidence.”
Allowing a party to use a report of the other party’s expert will in many, if not most, cases be consistent with case law recognition of the reliability of party admissions. (See, generally, Prince, Richardson on Evidence § 8-201 et seq. [Farrell 11th ed].) Although the statement of an expert retained by a party will not, for that reason alone, be deemed an admission by the party (see Matter of Seventh Jud. Dist. Asbestos Litig., 2 Misc 3d 518, 523 [Sup Ct, Monroe County 2003]), the expert’s statement will constitute an “adoptive admission” when the party has acknowledged and assented to it (see id. at 524; see also People v Campney, 94 NY2d 307, 311-312 [1999]).
Similarly, a limiting principle is necessary as to subsequent use of the document or information by the opposing party. Under what circumstances does the moving party have no cause for complaint if otherwise inadmissible material or information is used by the opposing party? It seems to this court that those circumstances must be found in the nature of the use that the moving party has made of the material or information.
*220 The opinions in the Second Department are not entirely consistent in the language used to describe the use that the defendant has made of the unsworn report that has the result of placing it “properly before the court.” Some state that the report was “relied upon” by the defendant. (See Pech v Yael Taxi Corp., 303 AD2d 733, 733 [2d Dept 2003]; Perry v Pagano, 267 AD2d at 290; Raso v Statewide Auto Auction, 262 AD2d 387, 387-388 [2d Dept 1999]; see also Rosario v Universal Truck & Trailer Serv. Inc., 7 AD3d 306, 309 [1st Dept 2004] [“affirmatively relied on”].) Other opinions state that the report was “submitted” by the defendant. (See Khalil v Morris, 304 AD2d 530, 531 [2d Dept 2003]; Borino v Little, 273 AD2d at 263; Jackson v New York City Tr. Auth., 273 AD2d 200, 201 [2d Dept 2000]; see also Pagels v P.V.S. Chems., 266 AD2d 819, 819-820 [4th Dept 1999].) Other opinions, speaking of the “results” or “findings” contained in the reports, state that they were “referred to” by the defendant’s doctor (see Ayzen v Melendez, 299 AD2d 381, 381 [2d Dept 2002]), or that they were “mentioned in” the affidavit of defendant’s doctor (see Plinto v Oliva, 2003 NY Slip Op 51202[U], *2 [App Term, 2d & 11th Jud Dists 2003]).
To this court, it appears problematic that the mere reference to, or mention of, a document in the moving papers, or even the inclusion of the document among the papers, would make the document available to the opposing party. The litigant who attempts to provide the court with a full and accurate description of the transaction at issue will want to reference material documents, and perhaps provide a copy, but may well not want to vouch, in any sense, for the probative value of the document. A rule that would permit an opposing party to use a document merely mentioned or submitted by the movant would discourage completeness and accuracy, and instead provide incentive for perceived strategic editing, to the detriment of the court’s understanding. An appropriate rule would, in effect, require that the moving party have, to some extent, acknowledged or vouched for the probative value of the document, and this court finds that the “affirmatively relied upon” formulation (see also Rosario v Universal Truck & Trailer Serv. Inc., 7 AD3d at 309) affects the purpose. That rule would understand “reliance” in a formal sense, so as to include use for purposes of refutation. (See Brown v Achy, 9 AD3d 30, 32-33 [1st Dept 2004]; id. at 35, 40 [Friedman, J., dissenting].)
Considering the instant motion in light of all this, Travelers contends that A.B. Medical “itself made reference to and placed *221 the contents of [Dr. Christopher Burrei’s peer review] report in issue”; thus, the “report was admissible for purposes of considering defendant’s opposition whether or not the report was sworn” and the “report and findings should have been considered to determine whether or not a question of fact existed warranting trial.” (Affirmation in support 1i 8.) Travelers has properly provided the court with a copy of A.B. Medical’s papers on the prior motion. A review of the papers reveals that Dr. Burrei’s report is not specifically identified in either the affidavit or in the memorandum of law submitted in support of the motion, nor is a copy of the report submitted with the papers. The affidavit alleges that the subject bill was “improperly denied . . . with . . . Menial alleging a peer review.” Included among the papers was the denial dated September 17, 2002, which states: “No fault benefits for the above named provider are denied because the provider has failed to substantiate the necessity for the medical services rendered. Please see attached report by Christopher burrei, md, performed on 8/30/2002 of [sic] which this denial is based.”
As already noted, A.B. Medical did not submit a copy of Dr. Burrei’s report, presumably attached to the denial, and provides no explanation for the omission. The omission is troubling, particularly because in the affidavit A.B. Medical challenges Dr. Burrei’s report by reference to another peer review report, one addressed to an earlier bill submitted by A.B. Medical, and that other peer review report is included among the moving papers.
In determining whether Dr. Burrei’s report is “properly before the court” (see Perry v Pagano, 267 AD2d at 290), the court notes at the outset that a peer review is not a medical report of the type courts have accepted, although unsworn, in the threshold cases. The report is not used by Travelers or anyone else in the course of the diagnosis or treatment of a patient, and does not, therefore, share the trustworthiness that the report of a treating health care provider might possess. Rather, the report is used by Travelers to decide whether to pay a claim, and to support its decision should it decide not to pay.
Nor does the peer review relate to A.B. Medical’s prima facie showing on its motion. The report addresses the medical necessity of the services covered by the subject bill, but A.B. Medical does not have the burden on its motion to make any showing on medical necessity beyond that represented by the properly-completed claim. (See A.B. Med. Servs. PLLC v GEICO Ins., 2 Misc 3d 26, 27 [App Term, 2d & 11th Jud Dists 2003]; see also *222 Oceanside Med. Healthcare, P.C. v Progressive Ins., 2002 NY Slip Op 50188[U], *15-22 [Civ Ct, Kings County 2002].) The use of the peer review report is not like, for example, use of the insurer’s denial to make a prima facie showing that the claim was submitted. (See A.B. Med. Servs. v New York Cent. Mut. Fire Ins. Co., 3 Misc 3d 136[A], 2004 NY Slip Op 50507[U] [App Term, 2d & 11th Jud Dists 2004].)
The peer review report is, however, both an expert report and Travelers’ “own.” (See Mahoney v Jackson’s Mar., 305 AD2d at 556.) Moreover, the report was cited in Travelers’ denial as the basis for its refusal to pay the claim, thereby adopting the report’s findings and conclusions as Travelers’ own. (See Seventh Jud. Dist. Asbestos Litig., 2 Misc 3d at 524.) That the insurer bears the burden on medical necessity does not appear to undermine the legislative policy that supports the exception in the furtherance of prompt and full compensation of first-party claims. Assuming that an insured or an assignee-provider makes such use of the report that it would otherwise be deemed “properly before the court,” little reason presents itself to deny the report of that status because of the allocation of burden of proof. That the exception may be more justified to assist in a prima facie showing does not mean it lacks justification when the document is not required for that purpose.
Here, however, there is a real question as to whether A.B. Medical has used the report in such a manner as to allow Travelers to do so — that is, did A.B. Medical affirmatively rely on the report. Again, as noted, A.B. Medical did not submit a copy of the report, but referred to it in challenging the denial as improper, and then challenged its implied, but unstated, findings with another peer review report, a copy of which was submitted. A.B. Medical argues that it “did not use any unsworn report to prove an affirmative fact,” making the threshold cases inapposite. (Plaintiff’s mem of law in opposition; plaintiff did not paginate its memorandum of law, defeating citation by page number.) Rather, A.B. Medical “merely pointed out the deficiency in the report.” (Id.) According to A.B. Medical, to accept Travelers’ position “would mean that plaintiff could never start off a summary judgment motion by pointing out the inadequacy of defendant’s peer review.” (Id.)
A.B. Medical, however, understates the nature of its use of the report and overstates the effect of a ruling in Travelers’ favor. Its use of the peer review report on the question of “medical necessity” is similar to defendant’s use of a medical report *223 on the question of “serious injury”; the latter is no more an issue of “affirmative fact” than the former, and both are determined in part by expert opinion. And A.B. Medical makes a substantive challenge to the opinion stated in Dr. Burrei’s report, even if it manages to do so without explicitly describing the findings or conclusions or submitting a copy of the report. Use for refutation is, nonetheless, reliance.
The court will not speculate as to A.B. Medical’s ultimate purpose in addressing in its motion papers an issue that was not an element of its prima facie showing. Having determined that a peer review report may be “properly before the court” for an insured’s or assignee-provider’s purpose, the court must allow the insurer to respond when that purpose is implemented by a challenge to the report’s findings or conclusion. Such a use acknowledges the probative value of the report, and, having brought the report to the court’s attention, the plaiptiff “cannot ... be heard to complain.” (See Pietrocola v Battibulli, 238 AD2d at 866 n.) It would not be the first time that an assigneeprovider that went beyond its prima facie showing and introduced other issues in its motion papers discovered that its motion was denied as a consequence. (See Amaze Med. Supply Inc. v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U], *4 [App Term, 2d & 11th Jud Dists 2003].)
A.B. Medical having “opened the door,” the report of Dr. Burrei is, therefore, available to Travelers in opposition. The report “set[s] forth a factual basis and medical rationale sufficient to create a triable issue as to the treatment’s medical necessity.” (See Park Health Ctr. v Peerless Ins. Co., 2 Misc 3d 127[A], 2003 NY Slip Op 51687[U], *1 [App Term, 2d & 11th Jud Dists 2003].)